[No. C027036. Third Dist. Aug. 5, 1998.]

BOYD M. HALVORSEN, SR., Plaintiff and Appellant, v. ARAMARK UNIFORM SERVICES, INC., et al., Defendants and Respondents.

## COUNSEL

Robert L. Tamietti for Plaintiff and Appellant.

The Struck Firm and James D. Struck for Defendants and Respondents.

## OPINION

**NICHOLSON, J.**—An at-will employee is terminated and sues his manager, alleging the manager intentionally interfered with the employment relationship by wrongfully inducing the employer to terminate him. Under such circumstances, we conclude the manager has an absolute privilege against liability for inducing the termination of the employee. We also conclude the employer is not liable for breach of contract or of the covenant of good faith and fair dealing. We therefore affirm the judgment in this case in favor of the employer and the manager.

### FACTS AND PROCEDURE

Plaintiff Boyd M. Halvorsen, Sr., worked as a district manager in Sparks, Nevada, for defendant Aramark Uniform Services, Inc. Peter Scianna, his immediate superior, was based in Sacramento. In December 1994, Baldini's casino requested $15,000 worth of specialty linens for its new steak house. Aramark would retain ownership of the linens and earn profits by servicing them. However, Baldini's did not wish to enter into a long-term contract. Because of the risk of purchasing the specialty linens without a long-term contract, Halvorsen obtained the approval of Scianna to go forward.

Three weeks after opening the steak house, Baldini's shut it down, and Aramark was left with unusable specialty linens. Soon thereafter, in January

1995, Halvorsen attended a meeting in Sacramento. During the meeting, a high-ranking manager of Aramark questioned Halvorsen about purchasing the linens for Baldini's without a long-term contract. Halvorsen indicated that Scianna, who was in attendance at the meeting, had approved the purchase.

Before leaving Sacramento, Halvorsen was given the paychecks for employees at the Sparks facility to be distributed the next day. Instead of driving to Sparks that evening, Halvorsen went home to Truckee. The next day, when Halvorsen arrived at the Sparks facility, Scianna instructed him to return to Sacramento immediately. Halvorsen did so.

When Halvorsen arrived in Sacramento, Scianna confronted Halvorsen about embarrassing him and lying in the meeting the previous day. Joe Vona, another superior, then gave Halvorsen a memo stating he was being terminated "[d]ue to performance."

Halvorsen's written employment contract with Aramark, dated November 11, 1988, provided that Halvorsen would be employed for at least three months and, after that, could be terminated upon two weeks' notice.

Halvorsen sued Aramark for breach of contract and breach of the implied covenant of good faith and fair dealing and Scianna for intentional interference with contractual relations. The trial court, however, granted Scianna's demurrer and Aramark's motion for summary judgment and, thereafter, entered judgment against Halvorsen.

DISCUSSION

I

*Contract Claims Against Aramark*

After review of the contract and the factual allegations made in the complaint and the motion for summary judgment, we conclude the trial court was correct in determining Halvorsen's employment with Aramark was at-will as a matter of law.

In reviewing the propriety of a summary judgment, we resolve all doubts in favor of the party opposing the judgment. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 183 [203 Cal.Rptr. 626, 681 P.2d 893].) We conduct an independent examination to determine whether there are any genuine issues of material fact and whether the summary judgment is

proper as a matter of law. (*Lichty* v. *Sickels* (1983) 149 Cal.App.3d 696, 699 [197 Cal.Rptr. 137].)

■ Halvorsen attempts to show there was an implied-in-fact agreement not to terminate him except for good cause. ■ In support, he cites the factors cited in the seminal case on implied-in-fact employment agreements, *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917]. These factors include "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." (*Id.* at p. 327, fns. omitted; see also *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 680 [254 Cal.Rptr. 211, 765 P.2d 373].)

■ The flaw in Halvorsen's argument, however, is that the factors cited in *Pugh* have no relevance when there is an express contract of employment which states the term of employment. (*Camp* v. *Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 630 [41 Cal.Rptr.2d 329] (hereafter referred to as *Camp*).) ■ " 'There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results.' (*Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 482. . . , criticized on other grounds in *Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at p. 688.) The express term is controlling even if it is not contained in an integrated employment contract. (*Gerdlund* v. *Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 272. . . [.)] Thus, [the employees'] express at-will agreement precluded the existence of an implied contract requiring good cause for termination." (*Camp, supra*, at p. 630.)

■ Halvorsen's attempt to distinguish *Camp* is unconvincing. He states that, in *Camp*, "[t]he elapsed period between the at-will writing[] and the date of termination was merely eight months. [Citation.] Here, the period was six years and two months. Most important [*sic*], the plaintiff in *Camp* put on none of the factors from *Foley* (longevity, assurances of continued employment, raises, custom and practice of employer, etc.). [Citation.] Here, Halvorsen put on ample evidence of all of those factors required to present an issue of fact precluding summary judgment. *Camp* simply should not apply in this case." (Bold lettering omitted.)

Halvorsen's argument is illogical. He asserts the factors supporting a finding of an implied-in-fact employment agreement exist here, so we should not apply *Camp*. *Camp*, however, held that factors supporting a finding of an implied-in-fact employment agreement are irrelevant when, as here, there is an express agreement. Thus, Halvorsen's attempt to distinguish *Camp* misses

the mark. Accordingly, the express at-will agreement between Aramark and Halvorsen prevails.

Halvorsen also argues the parties modified the employment agreement. This, of course, is an argument separate and distinct from the argument that there existed an implied-in-fact agreement. He contends there was a subsequent express agreement modifying the written employment contract.

"Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration." (Civ. Code, § 1698, subd. (c).) While the law may permit modification of a written contract by an oral agreement, the facts presented here do not rise to the level of an agreement to modify the contract.

The applicable written employment agreement was signed in 1988, and provided for at-will employment after an initial three-month term. From his declaration opposing summary judgment, Halvorsen asserts the following as facts supporting his contention the at-will agreement was modified: "Two of my bosses prior to Mr. Scianna were Joe Martin and Tom Vona, the brother of Joe Vona who actually fired me. During his years of supervising me, Tom Vona repeatedly told me 'just keep your sales numbers up and that is all Aramark cares about. We don't care about anything except the numbers.' Joe Martin also told me 'I don't [care] what you do during the day time as long as your sales numbers are up at the end of the week.' At the time I was fired, the sales figures for my depot met and exceeded all expectations that had been set out for my depot by Mr. Scianna and Mr. Joe Vona."

As a matter of law, these statements did not modify the at-will agreement. They made no promises of job security, nor any mention of a requirement that termination be for good cause only. To the contrary, they appear to be directed more at Halvorsen's discretion in allocating his daily resources. An alleged oral contract with vague and uncertain terms is not binding. (*Banco Do Brasil, S. A.* v. *Latian, Inc.* (1991) 234 Cal.App.3d 973, 1015, fn. 55 [285 Cal.Rptr. 870].) Accordingly, this alleged modification is ineffectual.

At oral argument, Halvorsen cited, for the first time, *Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743 [200 Cal.Rptr. 605]. This belated reference is unhelpful to Halvorsen. In *Hillsman*, we determined that a provision allowing termination of the employee on 30 days' notice was not an express at-will agreement. It provided for the notice necessary for termination, not the grounds. We concluded, therefore, that an implied-in-fact promise not to terminate except for good cause would not conflict with the express contractual provision. (*Id.* at pp. 753-755.)

For two reasons, we reject Halvorsen's contention that *Hillsman* requires a result in his favor in this case. First, he did not raise this issue below and only raised it on appeal after the initial briefing was finished. It is therefore waived. (See *People* v. *Harris* (1992) 10 Cal.App.4th 672, 686 [12 Cal.Rptr.2d 758].)

And second, the contractual termination provision in this case, unlike the provision in *Hillsman,* is not limited to the notice required for terminating Halvorsen. The contract went on to state that Halvorsen could be terminated "without notice or salary in lieu thereof, for failure to properly discharge duties, intoxication, violation of the provisions of this Agreement, fraud or dishonesty." Read as a whole, the employment contract provided that Halvorsen could be terminated for good cause, without notice or salary in lieu of notice. Even lacking good cause, however, he could be terminated on two weeks' notice or two weeks' salary for any reason. Accordingly, Halvorsen's employment was at-will under the terms of the contract and an implied-in-fact promise not to terminate except for good cause cannot contradict the contractual at-will provision. Summary judgment on the breach of contract cause of action was proper.

## II

### *Covenant of Good Faith and Fair Dealing*

Having failed to identify any triable fact remaining as to whether his employment at Aramark was at-will, Halvorsen attempts to create a requirement of good cause for termination by invoking the covenant of good faith and fair dealing. His attempt is futile because the covenant of good faith and fair dealing "cannot be used to imply an obligation which would completely obliterate a right expressly provided by a written contract." (*Tollefson* v. *Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 853-854 [268 Cal.Rptr. 550], disapproved on other grounds in *Scott* v. *Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 474, fn. 5 [46 Cal.Rptr.2d 427, 904 P.2d 834].)

■ "We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms." (*Carma Developers (Cal.), Inc.* v. *Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374 [6 Cal.Rptr.2d 467, 826 P.2d 710].)

■ Citing the recent case of *Cotran* v. *Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93 [69 Cal.Rptr.2d 900, 948 P.2d 412], Halvorsen claims

Aramark was required to conduct a reasonable investigation before terminating him. *Cotran*, however, expressly applies only to cases in which an employee is under an *"implied* agreement not to be dismissed except for 'good cause' . . . ." (*Id.* at p. 95, italics in original.) Since we have concluded Halvorsen was under no such agreement, *Cotran* is inapplicable.

III

*Tort Claim Against Scianna*

■ Halvorsen contends the trial court improperly concluded Scianna could not be held liable in tort for intentional interference with contractual relations. The court reasoned that Scianna's alleged actions in inducing Halvorsen's termination were privileged under the manager's privilege. We conclude the trial court properly found no basis for Halvorsen's cause of action against Scianna.

■ "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co.* v. *Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587].) ■ A privilege, such as the manager's privilege, is an affirmative defense to the tort. (*Aalgaard* v. *Merchants Nat. Bank, Inc.* (1990) 224 Cal.App.3d 674, 683-684 [274 Cal.Rptr. 81].)

■ When a complaint affirmatively alleges facts amounting to an affirmative defense, it is subject to a demurrer. (See *Arriaga* v. *County of Alameda* (1995) 9 Cal.4th 1055, 1060 [40 Cal.Rptr.2d 116, 892 P.2d 150].) ■ Halvorsen's complaint alleged Scianna was a "managing agent" of Aramark. Accordingly, we must determine whether that status provided him with a privilege against liability for intentional interference with contractual relations in this context.

There are three formulations of the manager's privilege: (1) absolute, (2) mixed motive, and (3) predominant motive. As we must decide which is appropriate under California law and the circumstances of this case, we address all three.

Citing the importance of the confidential relationship between a manager and the principal or employer and the necessity of the principal to act

through its management, some cases, including a California case very similar to this case, have held that the manager's privilege to induce the principal to breach a contract is absolute. (*Marin* v. *Jacuzzi* (1964) 224 Cal.App.2d 549, 553-554 [36 Cal.Rptr. 880]; see also *Mallard* v. *Boring* (1960) 182 Cal.App.2d 390, 393 [6 Cal.Rptr. 171]; *Lawless* v. *Brotherhood of Painters* (1956) 143 Cal.App.2d 474, 478 [300 P.2d 159] ["One who is in a confidential relationship with a party to a contract is privileged to induce the breach of that contract."].) In *Marin*, the defendant, who was a vice-president, general manager, and director in the corporation, used his position in the corporation to have the plaintiff fired because the plaintiff filed an accusation with the state alleging the defendant, for his own benefit and contrary to the best interest of the corporation, established and manipulated several subsidiaries to siphon corporate assets. (224 Cal.App.2d at pp. 551-552.) Affirming a judgment of dismissal, the Court of Appeal held the defendant's actions to induce the plaintiff's termination were absolutely privileged. (*Id.* at p. 554.)

This application of the manager's privilege is the most amenable to resolution by summary judgment. Where, as here, the defendant holds a position of managerial authority, he is not liable for interference with employment relationship as a matter of law.

Many courts, however, have delved into the motives of the manager who induced the interference. For example, a California court, in different circumstances, has held: "[A] manager . . . may, with impersonal or disinterested motive, properly endeavor to protect the interests of his principal by counseling the breach of a contract with a third party which he reasonably believes to be harmful to his employer's best interests." (*Olivet* v. *Frischling* (1980) 104 Cal.App.3d 831, 841 [164 Cal.Rptr. 87], disapproved on other grounds in *Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 521, fn. 10 [28 Cal.Rptr.2d 475, 869 P.2d 454].) This formulation takes into account both the motive and the subjective belief of the manager.

The cases that have considered the manager's motive in deciding whether to accord the manager a privilege have split along two lines. One line requires only that the manager be motivated to some degree by a proper motive. Thus, even if the predominant motive is wrongful, the privilege applies if there also exists a motive that is not wrongful—for example, a reasonable belief the principal's breach of the contract is in the principal's best interest.

In *Los Angeles Airways, Inc.* v. *Davis* (9th Cir. 1982) 687 F.2d 321, a corporation's general counsel induced the corporation to breach a contract to

purchase the assets of another corporation. Sued for intentional interference with contractual relations, the general counsel obtained summary judgment on the affirmative defense of manager's privilege, even though the plaintiff asserted the defendant's motive was to improve his standing within his corporation by finding another seller who would sell for less. (*Id.* at pp. 323-324.) The Ninth Circuit affirmed the judgment and stated: "We conclude that where, as here, an advisor is motivated in part by a desire to benefit his principal, his conduct in inducing a breach of contract should be privileged. The privilege is designed to further certain societal interests by fostering uninhibited advice by agents to their principals. The goal of the privilege is promoted by protecting advice that is motivated, even in part, by a good faith intent to benefit the principal's interest." (*Id.* at p. 328; see also *Welch* v. *Bancorp Management Services* (1983) 296 Or. 208 [675 P.2d 172] [applying mixed-motive formulation of manager's privilege].)

Another line of cases has held that a manager's motive to benefit the employer must predominate over other self-interested motives in order for the manager to take advantage of the privilege. (See *Alyeska Pipeline Service* v. *Aurora Air Service* (Alaska 1979) 604 P.2d 1090.) In *Alyeska Pipeline Service*, the defendant induced a third party to breach a contract with the plaintiff. On appeal after a judgment in favor of the plaintiff, the Alaska Supreme Court held the plaintiff was entitled to recovery for interference with the contract if the proper motive was merely a facade for the predominant improper motive. (*Id.* at p. 1094.)

Thus, if the manager's privilege is not absolute, under the remaining formulations, the trier of fact must determine whether there is a proper motive (mixed motive) and, in some cases, whether the proper motive predominates over an improper motive (predominant motive). There is no authority for holding a manager liable for interference with contractual relations when an improper motive existed but was not the predominant motive. In other words, it appears that under all formulations of the manager's privilege the manager may *not* be held liable for interference with contractual relations if the predominant motive is proper, even if there is a coexistent but nonpredominant improper motive.

The cases in California have not been consistent on which formulation of the manager's privilege to apply. (See *Aalgaard* v. *Merchants Nat. Bank, Inc., supra,* 224 Cal.App.3d at p. 684.) Some cases have adopted the absolute privilege. (See *Marin* v. *Jacuzzi, supra,* 224 Cal.App.2d at pp. 553-554.) Other cases have found the motive of the defendant to be relevant, but those cases have not been entirely clear on whether they were adopting a mixed motive formulation or predominant motive formulation. (See *Olivet* v. *Frischling, supra,* 104 Cal.App.3d at pp. 840-841.)

Halvorsen argues that, since the contract was terminable at the will of Aramark and himself but not at the will of Scianna or any other third party, we must view his cause of action as one for interference with a contract, not a prospective economic advantage. (See *Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 39 [172 P.2d 867] [holding at-will employment contract is a contract for purpose of interference tort]; contra, *Diamond* v. *Chulay* (N.D.Ill. 1993) 811 F.Supp. 1321, 1334 [treating at-will employment contract as prospective economic advantage for purpose of interference tort]; see also *Pacific Gas & Electric Co.* v. *Bear Stearns & Co., supra,* 50 Cal.3d at p. 1127.) We agree. While it may be true the elements of the cause of action for interference with contractual relations are the same when one alleges interference with an at-will employment contract and one terminable only for good cause, the availability of the manager's privilege is a consideration separate and apart from the elements of the cause of action. (See *Marin* v. *Jacuzzi, supra,* 224 Cal.App.2d at p. 553.)

In our most recent discussion of the manager's privilege, we reviewed the history of the tort of interference with contractual relations and the applications of the manager's privilege. (*Aalgaard* v. *Merchants Nat. Bank, Inc., supra,* 224 Cal.App.3d at pp. 683-685.) However, we found it unnecessary to "unravel [the] knot of authority" regarding the proper application of the manager's privilege because, in that case, there was no evidence of improper motive. Thus, under any application of the privilege, the conduct involved there was privileged. (*Id.* at pp. 685-686.) Here, however, Scianna's motive is disputed. Specifically, Halvorsen claims Scianna induced Aramark to terminate him (Halvorsen) in order to save his own job after Halvorsen's revelation at the meeting with the high-ranking Aramark official that Scianna had approved the purchase of the linens for Baldini's. Accordingly, we must determine what formulation of the manager's privilege applies.

We begin with a hypothetical case in which the defendant is both the sole shareholder in the employing corporation and the highest ranking manager in the corporation. The plaintiff, who is employed pursuant to an at-will contract, is terminated. He cannot recover against the corporation because there was no agreement he would only be terminated for good cause; however, absent an absolute manager's privilege, he may be able to recover against the defendant, the sole shareholder in the employing corporation, under the guise of an action for intentional interference with contractual relations, if he can show there was no good cause. If the manager's privilege is not absolute, many employers lose the ability to have at-will employees.

The relationship between an employer and the management is uniquely confidential. For the convenience of the employer and out of necessity, the

management acts as the employer, either because of the size of the endeavor or the corporate existence of the employer. The relationship and communication with management must be open and specific for the business enterprise to succeed. Governmental interference with that relationship places restraints on how the business can be run. Accordingly, for the most part, interference should come only from the legislative branch, if at all, because, there, the public policy implications of such interference can be openly debated in a democratic forum.

The confidential relationship between employer and management is vital in a corporation: "A corporation is an imaginary being. It has no mind but the mind of its servants; it has no voice but the voice of its servants; and it has no hands with which to act but the hands of its servants. All its schemes of mischief, as well as its schemes of public enterprise, are conceived by . . . its servants' minds and hands. All attempts, therefore, to distinguish between the guilt of the servant and the guilt of the corporation; or the malice of the servant and the malice of the corporation; or the punishment of the servant and the punishment of the corporation, [are] sheer nonsense." (*Goddard* v. *Grand Trunk Ry.* (1869) 57 Me. 202, 223-224, quoted in Shapiro, The Oxford Dict. of American Legal Quotations (1993) p. 82.)

Under the circumstances of this case, which involves an employee terminable at the will of the employer and a manager who is also subject to the employer's discipline but in whom the employer has placed the trust and confidence associated with managing, the justification for judicial interference in the employer-management relationship is weak. Halvorsen asks that a fact finder delve into the relationship and communications between Scianna and other management at Aramark to determine whether, to an outsider, the management interchange was proper.

Since there is no reason to cause disruption of the business enterprise by investigating the employer's reasons and motives for terminating an employee when the employment is at-will, there is little justification for causing essentially the same disruption to discern the motives of management and the communications of management with the employer. Thus, when the employment is at-will, the manager's motives and communications with the employer concerning termination of the employer should receive the strongest protection from interlopers—an absolute manager's privilege.

While this approach is not consistent with all of the cases on the manager's privilege, that is because there is no consensus to follow. It is, however, consistent with the California case most on point. (*Marin* v. *Jacuzzi, supra,* 224 Cal.App.2d 549.)

Citing *Kozlowsky* v. *Westminster Nat. Bank* (1970) 6 Cal.App.3d 593 [86 Cal.Rptr. 52], Halvorsen seeks refuge in the argument that the right of the employer to terminate at-will and the privilege of the manager to induce the termination cannot be coextensive. *Kozlowsky*, however, specifically found that the manager's privilege was inapplicable because, even though the defendant was a director and majority shareholder of the employing corporation, he was not authorized to act on behalf of the corporation; he was not a manager. (*Id.* at p. 600.) Accordingly, Halvorsen's argument is unsupported. To the contrary, considerations relevant to the business enterprise weigh heavily in favor of a manager's privilege which is coextensive with the right of the employer to terminate at-will.

Although an at-will employment contract is not terminable at the will of third parties (see *Speegle* v. *Board of Fire Underwriters, supra,* 29 Cal.2d at p. 39), the employer is entitled to the full and open participation of management in the decision of whether to continue the employment. Furthermore, the employer may control the conduct of management, by termination of managers or lesser forms of discipline. By recognizing an absolute privilege for managers in this context, the control of the employer over the business enterprise is left intact, and we refrain from intermeddling in those affairs. Plaintiffs are also precluded from pleading around at-will employment contracts by challenging the motives of management, which, in effect, would require management, that is, the employer, to have good cause to terminate.

Accordingly, when an at-will employee is terminated, the manager's privilege is absolute. The manager's state of mind is irrelevant under these circumstances and, therefore, an action against the manager for interference with contractual relations may be disposed of by demurrer. When these principles are applied to this case it is evident the trial court properly sustained the demurrer.

### DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Morrison, J., concurred.

A petition for a rehearing was denied September 2, 1998, and appellant's petition for review by the Supreme Court was denied November 18, 1998.