Cecil R. HAWKINS, Plaintiff,

v.

**HOME DEPOT USA, INC., and Does 1 to 3, Defendants.**

No. CV02–05135 WHA.

United States District Court, N.D. California.

Nov. 18, 2003.

Cecil R. Hawkins, San Leandro, CA, Pro se.

Andrew J. Jaramillo, Michael J. Sexton, Payne & Fears LLP, Irvine, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALSUP, District Judge.

### INTRODUCTION

This order GRANTS defendant's motion for summary judgment as to plaintiff's claims for race discrimination, breach of contract, and breach of the implied covenant of good faith and fair dealing.

### STATEMENT

Plaintiff Cecil Hawkins was employed by defendant Home Depot USA, Inc. from May 2001 to September 2001. He worked during that time as part of the night crew. As his regularly scheduled hours were 10 p.m. to 7 a.m., when the store was closed, he had very little contact with customers.

Defendant instituted a reorganization, eliminating the night-crew position effective October 1, 2001. Defendant created a freight-team-associate position that was similar to the night-crew position. To qualify for the freight-associate position, an applicant had to be able to work a flexible schedule. Furthermore, because the job involved customer contact, an applicant had to pass a sales-associate test.

According to defendant, plaintiff was given the sales-associate test on or about August 22, 2001, and failed the test. He was told that because of this, his last day of work would be September 28, 2001. Plaintiff questions whether he failed the test, as he was not able to obtain a copy of his test and defendant was unable to produce certain test records of his. Plaintiff alleges that the real reason he was terminated was because he is African–American.

After informing plaintiff that he failed to qualify for the freight-associate position, defendant let plaintiff know that he could apply for other positions within the company for which he might be qualified. Plaintiff did not do so. Accordingly, his employment with defendant ended on September 29, 2001.

In January 2002, plaintiff filed a race discrimination complaint against defendant with the California Department of Fair Employment and Housing and with the Equal Employment Opportunity Commission. The EEOC ultimately dismissed plaintiff's complaint because it was "unable to conclude that the information obtained [in its investigation] establishes violations of the statutes" (Jaramillo Exh. F). Plaintiff filed the instant action pro se in Alameda County Superior Court. Defendant removed the action to this Court and now moves for summary judgment.

### ANALYSIS

**1. LEGAL STANDARD.**

To prevail on summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FRCP 56(c). When ruling on a motion for summary judgment, a court must draw all justifiable inferences from the evidence if favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the court nonetheless determines that no reasonable jury

could return a verdict for the nonmoving party, then an entry of summary judgment is warranted. *Id.* at 248, 106 S.Ct. 2505.

### 2. TITLE VII CLAIM.

■ Plaintiff argues that defendant discriminated against him on the basis of race in violation of Title VII. To establish a prima facie case of race discrimination, plaintiff must show: (1) he belongs to a racial minority; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) similarly situated employees who did not belong to the same racial minority were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659–60 (9th Cir.2002).

■ It is undisputed that plaintiff, who is African–American, belongs to a racial minority. It is also undisputed that plaintiff was terminated. Nonetheless, this order holds that on this record, no reasonable jury could find that a prima facie case of race discrimination has been established because plaintiff has not submitted sufficient evidence that he was qualified to work as a freight-team associate or that similarly situated non-African-American employees were treated more favorably.

■ Plaintiff has failed to show that he was qualified for the newly created position of freight-team associate. Because the freight-team associate position in-

volved customer contact, one of the qualifications for this position was passing the sales-associate test (Mathie Decl. ¶ 5–6; Souza Decl. ¶ 5–6). Defendant has submitted declarations of an associate development supervisor, Alda Souza, as well as an operations assistant manager, Curtis Mathie, stating that plaintiff failed the sales-associate test (Souza Decl. ¶ 7; Mathie Decl. ¶ 7). Plaintiff questions whether he in fact failed the test, noting that he was never given a copy of the test he took and that defendant did not produce the test result records for him as it did for the other night crew employees.[1] Defendant submitted testimony that it was unable to provide plaintiff with a copy of the test and his answers because the test was administered electronically (Souza Decl. ¶ 11). In any event, plaintiff's doubts do not constitute affirmative evidence that he in fact passed the test. Furthermore, even ignoring the issue of the sales-associate test, plaintiff admits that he was unwilling to work during the day (Pl.Dep.93:2–4, 199:16–18). The job description for freight-team associate identified the ability to work a "flexible schedule" as one of the minimum qualifications of the job (Souza Exh. A). Thus, even if plaintiff had passed the sales test, the record shows that he nonetheless would not have been qualified to work as a freight-team associate.[2]

■ Plaintiff likewise fails to show that similarly situated employees of other races were treated more favorably than he was.

---

1. In his opposition, plaintiff argues that defendant's failure to maintain his test records constitute a violation under the Fair Employment and Housing Act, Cal. Gov't Code 12946. Because no mention of this was made in plaintiff's EEOC charge (Jaramillo Exh. E), plaintiff has failed to exhaust his administrative remedies with regard to this claim and therefore cannot pursue it in this action. *See Martin v. Lockheed Missiles & Space Co.*, 29 Cal.App.4th 1718, 1724, 35 Cal.Rptr.2d 181, 183 (1994). Plaintiff further suggests in his

opposition that defendant unlawfully altered test scores on the basis of race. This order rejects this theory as well; in addition to lacking an evidentiary basis, it was absent from both the EEOC charge and the complaint.

2. The record further demonstrates that despite being offered the opportunity to do so, plaintiff declined to apply for other positions with the company for which he might have been qualified (Pl.Dep. 190–194).

Plaintiff admitted during his deposition that he was aware of no individual who was hired to work as a freight-team associate without passing the sales-associate test (Pl.Dep.228:15–22):

Q: Do you know if there is a single person who worked on the freight team after—or has worked on the freight team since its inception who has not passed a sales test?

A: I haven't talked with anybody. I haven't talked with anyone.

Q: So you're not aware of that?

A: No.

Plaintiff has submitted no evidence to controvert this representation.[3]

■ Even if one were to assume, for the sake of argument, that a prima facie case of race discrimination had been established, plaintiff's Title VII claim would fail nonetheless. If a prima facie case has been established, the burden then shifts to the employer to produce legitimate, non-discriminatory reasons for its actions. *Lyons v. England,* 307 F.3d 1092, 1112–13 (9th Cir.2002). Once this is done, it is up to the plaintiff to show that these reasons are pretextual. *Id.* at 1113. Here, plaintiff was terminated as part of a reorganization that resulted in the elimination of the position for which he had been hired. He was not made a freight-team associate because he did not qualify for that position. These were legitimate, nondiscriminatory reasons for plaintiff's termination. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1282 (9th Cir.2000) (holding, in an age-discrimination action, that a workforce reduction and lack of proper qualifications were both legitimate nondiscriminatory reasons for an employee's termination). In response, plaintiff has not shown that defendant's explanation is "unworthy of credence" or that defendant was more likely motivated by unlawful discrimination. *See Lyons,* 307 F.3d at 1113.

### 3. CONTRACT CLAIMS.

■ Plaintiff also asserts claims for breach of contract, both express and implied, and breach of the implied covenant of good faith and fair dealing. These claims too fail on summary judgment. Under California law, an employment relationship with no specified term is presumed to be "at will," meaning that the employee and the employer are both free to terminate the relationship at any time, with or without cause. Cal. Lab.Code 2922; *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 385 (1988). To overcome this presumption, a discharged employee must prove that there was a contract providing otherwise.

■ In this case, plaintiff signed an employment application that contained the following language (Jaramillo Exh. H):

Should I become an employee of The Home Depot, I understand that my employment will be for no definite term, and that I will have the right to terminate my employment at any time, at my convenience, with or without cause or reason. I further understand that The Home Depot will have the same right. I understand that I am expected to comply with all Company rules and regulations, but that such rules do not create a contract between me and the Company. I understand and agree that any handbook I receive will not constitute an employment contract, but will be a statement of the Company's current policies.

---

**3.** Plaintiff states in his opposition that other employees were given assistance in passing the test. Plaintiff, however, sets forth no evidence of this. At best, the evidence on which he seeks to rely for this proposition shows only that some employees took the test again after having failed it previously.

Rather than rebutting the statutory presumption of at-will employment, this agreement confirms that plaintiff's employment with defendant was at will.

■ In spite of this, plaintiff argues that defendant's personnel policies or practices gave rise to an implied contract that plaintiff would only be terminated for good cause. Plaintiff's arguments fails. *First*, under California law, an express at-will provision controls over any implied-in-fact contract. *Halvorsen v. Aramark Uniform Servs.*, 65 Cal.App.4th 1383, 1388, 77 Cal. Rptr.3d 383, 385 (1998). *Second*, plaintiff misrepresents the contents of the orientation book when he suggests that it is defendant's stated policy to terminate for only serious misconduct or when an employee fails to improve after a warning or counseling. Rather, according to the orientation book itself, the disciplinary process to which plaintiff refers is merely one that "may be used" by management (Pl.'s Exh. F; Jaramillo Exh. G). The orientation book makes clear that "the Company has the sole discretion to determine the appropriate form of corrective action in any particular situation," and "[t]his includes the right of the Company to terminate an associate's employment without any prior counseling" (*ibid.*). Finally, it bears repeating that plaintiff signed an employment application that specifically stated: "I understand and agree that any handbook I receive will not constitute an employment contract, but will be a statement of the Company's current policies." No reasonable jury could conclude on this record that plaintiff's employment was anything other than at will.

Because plaintiff has failed to show that there was a contract contrary to his at-will employment, his claim for breach of contract fails as a matter of law. So too does his claim for breach of the implied covenant of good faith and fair dealing. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317,

100 Cal.Rptr.2d 352, 8 P.3d 1089, 1110 (2000) (holding that the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement").

### 4. EVIDENTIARY OBJECTIONS.

Numerous evidentiary objections were submitted in conjunction with this motion. Plaintiff, for one, objects to defendant's reliance on his March 7 deposition testimony because he contends that he never had an opportunity to purchase, review, or make corrections to the transcript before it was lodged with the Court. Plaintiff asserts that he "believes that most of [his] answers in the deposition transcript used by the defendant in their summary judgment are either taken out of context or were not plaintiff's answers at the deposition" (Pl. Decl. at 1).

Defendant submitted into evidence a letter to plaintiff from the court reporter, dated March 18, 2003, stating that the transcript was available for review and could be used with full force and effect if no corrections were made by plaintiff within thirty days of the letter's receipt (Sexton Exh. A). A copy of this letter appears within the bound copy of the deposition transcript, on the page following the court reporter's certification. At the hearing, Mr. Hawkins testified under oath that although the mailing address indicated on the letter was his, he never received the letter. Counsel for defendant testified that he had a telephone conversation with plaintiff on or about September 24, in which he gave plaintiff the court reporter's contact information after plaintiff said he did not have a copy of the transcript.

Even if plaintiff lacked the opportunity to correct the deposition transcript in the first instance, nothing prevented him from setting the record straight when opposing

defendant's summary-judgment motion. However, instead of identifying which specific statements were incorrect or taken out of context, plaintiff objected to the deposition transcript in its entirety. Plaintiff's wholesale objection to the use of the deposition transcript is overruled.

For its part, defendant argues that plaintiff's opposition brief and supporting declaration should be stricken for violating several local rules concerning document form and that plaintiff should be sanctioned. Such a harsh result is unwarranted and will not be imposed. The Court understands that defendant also has numerous specific evidentiary objections—which are set forth in a 71–page document—but finds to the extent they have not been implicitly addressed in the foregoing ruling, they need not be reached.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. The Clerk shall close the file.

**IT IS SO ORDERED.**