[No. B191267. Second Dist., Div. Five. May 24, 2007.]

CALVIN FRANKLIN, Plaintiff and Appellant, v.
THE MONADNOCK COMPANY et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Mark Weidmann, Mark Weidmann and Lee K. Franck for Plaintiff and Appellant.

Seyfarth Shaw, Eric M. Steinert and Michael D. Mandel for Defendants and Respondents.

**OPINION**

**MOSK, J.—**

## INTRODUCTION

Plaintiff and appellant Calvin Franklin (plaintiff) filed a first amended complaint against defendants and respondents The Monadnock Company and Hi-Shear Corporation (defendants), as well as others, alleging a single cause of action for wrongful termination of employment in violation of public policy. Plaintiff alleged that a coworker in the workplace had threatened to have plaintiff and three other employees killed, that defendants did nothing in response to his complaint to them about the threats, that the coworker thereafter assaulted him with a screwdriver, that plaintiff reported the assault to the police, and that plaintiff was terminated from his employment as a result of his complaints to defendants and the police. The trial court sustained defendants' demurrer to the first amended complaint without leave to amend and entered a dismissal order.

██ On appeal from the dismissal order, we hold that plaintiff's allegations are sufficient to state a claim for wrongful termination based on the public policies that require employers to provide a safe and secure workplace and encourage employees to report credible threats of violence in the workplace. We therefore reverse the dismissal order.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. *First Amended Complaint*

Plaintiff alleges in his first amended complaint the following relevant facts. Defendants hired plaintiff as a "heat-treater" on or about June 1, 2004. Coworker Richard Ventura (Ventura) "threatened the safety of employees Raoul Lopez, Fernando Merida, Burt (last name unknown) and [plaintiff] by stating that he would have them killed." "[Plaintiff's] fellow co-workers,

including but not limited to Raoul Lopez, Fernando Merida and Burt (last name unknown), elected [plaintiff] to complain about [Ventura's] threats to their physical safety to [defendants' human resources] department in order to protect the health and safety of everyone in the facility." Plaintiff then complained to defendants' human resources department about Ventura's threats.

Notwithstanding defendants' knowledge of plaintiff's concern for the safety of all the employees at the facility based on the threat posed by Ventura, defendants "refused to keep [plaintiff] or his fellow co-workers safe from [Ventura], failed to counsel, warn or segregate [Ventura] and failed to prevent [Ventura] from directly assaulting [plaintiff] or his fellow co-workers . . . ." Instead, defendants "maintained a[n] unsafe place of employment by allowing the threats of violence and attempted violence to continue unheeded in the workplace."

A week after plaintiff complained to defendants about Ventura's threats, Ventura attempted to stab plaintiff with a metal screwdriver and another unidentified weapon.[1] In response, plaintiff complained to the police department that "his safety, as well as that of his coworkers, was being endangered by [Ventura]." As a proximate result of plaintiff's complaints about Ventura "internally" to defendants and "externally" to the police, defendants terminated plaintiff's employment.[2]

## B. *Demurrers and Order of Dismissal*

Plaintiff alleged in his original complaint that plaintiff had complained to defendants about a threat to his safety made by a coworker in the workplace, but did not mention Ventura, Ventura's threats to coworkers, or Ventura's assault on plaintiff. Defendants responded to that complaint by filing a demurrer, which the trial court sustained with leave to amend.[3] Plaintiff then filed his first amended complaint that included allegations that Ventura threatened three coworkers, in addition to plaintiff, and thereafter assaulted

---

[1] Plaintiff does not explicitly allege that Ventura's assault took place in the workplace. But, as stated above, he does allege that defendants allowed "attempted violence to continue unheeded in the workplace."

[2] There is no allegation that plaintiff reported Ventura's assault with the screwdriver directly to defendants. Plaintiff does, however, allege that defendants terminated his employment, in part, because he reported that assault to the police. As noted, he also alleges that defendants allowed "attempted violence to continue unheeded in the workplace."

[3] The reporter's transcript of the hearing on the demurrer to the original complaint reflects the trial court's intent to sustain the demurrer with leave to amend, but at the conclusion of the hearing the trial court stated that the demurrer was sustained "without" leave to amend. Plaintiff subsequently filed the first amended complaint, which confirms the trial court's intent to allow him to amend his pleading.

plaintiff with a screwdriver. Defendants responded with another demurrer, arguing that the new allegations were inconsistent with the original complaint and therefore "sham." The trial court sustained the demurrer to the first amended complaint without leave to amend on the basis that plaintiff had not stated, and could not state, facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) Based on the order sustaining the demurrer, the trial court entered an order dismissing the first amended complaint with prejudice. Plaintiff timely appealed.

## DISCUSSION

### A. Standard of Review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].) The court does not, however, assume the truth of contentions, deductions or conclusions of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) The judgment must be affirmed 'if any one of several grounds of demurrer is well taken. [Citations.]' (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 21 [157 Cal.Rptr. 706, 598 P.2d 866].) However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817].)" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317] (*Aubry*); see also *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 [27 Cal.Rptr.3d 661, 110 P.3d 914].)

### B. Tort of Wrongful Discharge in Violation of Public Policy

■ "[T]he vast majority of states have recognized that an at-will employee possesses a tort action when he or she is discharged for performing an act that public policy would encourage, or for refusing to do something that public policy would condemn. [Citations.]" (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1090 [4 Cal.Rptr.2d 874, 824 P.2d 680].) "The difficulty, of course, lies in determining where and how to draw the line between claims that genuinely involve matters of public policy, and those that concern merely ordinary disputes between employer and employee. This determination depends in large part on whether the public policy alleged is sufficiently clear to provide the basis for such a potent remedy." (*Ibid.*)

■ "In *Stevenson* [*v. Superior Court* (1997) 16 Cal.4th 880, 889–890 [66 Cal.Rptr.2d 888, 941 P.2d 1157]], [the Supreme Court] noted that a historical survey of tortious discharge decisions established four requirements that a policy must meet in order to support a [wrongful discharge] claim: 'First, the policy must be supported by either constitutional or statutory provisions. Second, the policy must be "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be "fundamental" and "substantial." ' " (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 272 [121 Cal.Rptr.2d 203, 47 P.3d 1069].)

### C. *Public Policy Requirement*

Defendants contend that plaintiff cannot state a wrongful termination cause of action because plaintiff's complaint to them about Ventura's threats and his report of the assault to the police did not involve a fundamental public policy contained in a constitutional or statutory provision. We disagree.

In *City of Palo Alto v. Service Employees Internat. Union* (1999) 77 Cal.App.4th 327 [91 Cal.Rptr.2d 500] (*Palo Alto*), the court considered the city's contention that an arbitration award reinstating a terminated employee violated a fundamental public policy requiring employers to provide a safe workplace by terminating employees who make threats to the lives of coworkers. (*Id.* at p. 330.) The city maintained that the statutory provisions in Labor Code section 6400 et seq.,[4] which concern employers' duties and responsibilities regarding safety in employment, established the public policy. (77 Cal.App.4th at p. 334.) The city also relied on Code of Civil Procedure

---

[4] Labor Code section 6400, subdivision (a) provides: "Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein."

Labor Code section 6401 provides: "Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees."

Labor Code section 6402 provides: "No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe and healthful."

Labor Code section 6403 provides: "No employer shall fail or neglect to do any of the following: [¶] (a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe. [¶] (b) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe. [¶] (c) To do every other thing reasonably necessary to protect the life, safety, and health of employees."

Labor Code section 6404 provides: "No employer shall occupy or maintain any place of employment that is not safe and healthful."

section 527.8,[5] which provides employers with an injunctive remedy to address "unlawful violence or a credible threat of violence" by any individual, including by any employee against a coworker in the workplace. (77 Cal.App.4th at p. 334.)

■ The court in *Palo Alto, supra,* 77 Cal.App.4th 327 analyzed the statutory provisions upon which the city relied as follows: "While Labor Code section 6400 et seq. focuses on occupational injury and illness and makes no specific mention of workplace violence or threats of violence, those provisions clearly make it an employer's legal responsibility to provide a safe place of employment for their employees. CalOSHA (California Occupational Safety and Health Act) considers risks of workplace violence to be a workplace safety issue, which must be addressed in an employee's injury prevention program. [Citations.] [¶] Code of Civil Procedure section 527.8, which was added by the 'Workplace Violence Safety Act' [citation], specifically addresses potential workplace violence. That section was 'intended to provide optional remedies which supplement rather than replace existing remedies against workplace violence, and does not obligate an employer to seek those optional remedies.' [Citation.]" (*Id.* at pp. 335–336, fn. omitted.) The court concluded that "these provisions taken together express an explicit public policy requiring employers to take reasonable steps to provide a safe and secure workplace. . . . Such responsibility appears to include the duty to adequately address potential workplace violence. [Fn. omitted.]"[6] (*Id.* at pp. 336–337.)

■ Labor Code section 6400 et seq. and Code of Civil Procedure section 527.8, when read together, establish an explicit public policy requiring employers to provide a safe and secure workplace, including a requirement that an employer take reasonable steps to address credible threats of violence in the workplace. A credible threat is one that an employee reasonably believes will be carried out, so as to cause the employee to fear for his or her

---

[5] Code of Civil Procedure section 527.8, subdivision (a) provides: "Any employer, whose employee has suffered unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace, may seek a temporary restraining order and an injunction on behalf of the employee and, at the discretion of the court, any number of other employees at the workplace, and, if appropriate, other employees at other workplaces of the employer."

[6] The court in *Palo Alto, supra,* 77 Cal.App.4th at page 337 went on to conclude that even though there was an explicit public policy requiring employers to address adequately potential violence in the workplace, the duty imposed by that policy did not necessarily include "the obligation to automatically fire any employee who makes a threat of violence regardless of the employee's intent in uttering it and the actual risk to workplace safety . . . ." In doing so, however, the court acknowledged that an employer "might be required to summarily place an employee on administrative leave to fulfill its duty of providing a safe workplace where the [employer] has reasonable proof that an employee has made a credible threat of violence against a coworker . . . ." (*Ibid.*)

safety or that of his or her family. (See Code Civ. Proc., § 527.8, subd. (b)(2) [defining "[c]redible threat of violence" as "a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose"]; Pen. Code, § 139, subd. (c) [defining a "credible threat" as "a threat made with the intent and the apparent ability to carry out the threat so as to cause the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family"]; Pen. Code, § 646.9, subd. (g) [defining "credible threat" as "a verbal or written threat . . . made with the intent . . . and . . . with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family"]; see also Pen. Code, § 76, subd. (c)(5) [defining "threat" as "a verbal or written threat or a threat implied by a pattern of conduct or a combination of verbal or written statements and conduct made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target . . . to reasonably fear for his or her safety or the safety of his or her immediate family"].)

 And it is the policy of this state to protect an employee who complains "in good faith about working conditions or practices which he reasonably believes to be unsafe." (*Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290, 299 [188 Cal.Rptr. 159] (*Hentzel*).)

Defendants' position that there is no explicit public policy concerning the prevention of workplace violence would lead to the anomalous result that the Labor Code provisions to which we refer establish an express public policy requiring employers to take reasonable steps to protect employees from foreseeable occupational injuries and illnesses, but do not establish any corresponding policy concerning injuries in the workplace from foreseeable violence or credible threats of violence. There is no logic in drawing such an artificial distinction, and such a distinction ignores the reality of workplace violence that statutes like Code of Civil Procedure section 527.8 were enacted to address.[7] Moreover, it is self-evident that the policy expressed in the statutes upon which we rely that protects employees from violence or threats of violence in the workplace is a fundamental and substantial public policy. Threats can be crimes. (See, e.g., Pen. Code, § 422.)

---

[7] "The U.S. Department of Labor report entitled National Census of Fatal Occupational Injuries states that 631 homicides occurred in workplaces in 2003, the third leading cause of job-related injury deaths. . . . [¶] . . . [¶] . . . A study conducted by the US Department of Justice, Bureau of Justice Statistics from 1993 to 1999, found that each year an estimated 1.7 million workers fell victim to non-fatal violent crime—simple or aggravated assault, robbery, and rape or sexual assault—while at work or on duty. . . . [¶] . . . In six of the last seven years, Fortune 1000 companies responding to an annual survey conducted by the Pinkerton security company cited workplace violence as the number one security threat facing companies." (ASIS International, Workplace Violence Prevention and Response Guideline (2005) p. 10, fn omitted.)

Defendants rely on *Muller v. Automobile Club of So. California* (1998) 61 Cal.App.4th 431 [71 Cal.Rptr.2d 573] (*Muller*), disapproved on other grounds in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6 [130 Cal.Rptr.2d 662, 63 P.3d 220], to support their contention, in effect, that there is no fundamental public policy requiring employers to take reasonable steps to address mere threats of violence in the workplace, even if the prevention of actual violence or highly foreseeable violence in the workplace is covered by an applicable statutory provision. In that case, the plaintiff employee, a claims adjustor, had been threatened in her workplace by the son of an insured. (*Id.* at pp. 435–436.) She contended in her lawsuit that when she expressed to the defendant employer her concerns about her safety in the workplace, she was terminated in violation of public policy. (*Id.* at p. 438.) The defendant successfully moved for summary judgment. (*Ibid.*)

In affirming the judgment, the Court of Appeal in *Muller, supra,* 61 Cal.App.4th at page 452 concluded that "[t]he [trial] court properly adjudi-cated [plaintiff's] cause of action for tortious discharge in violation of public policy in favor of [the defendant]." The court explained that "[t]here is no evidence in the record that [plaintiff] was subjected to unsafe working conditions in the . . . office where she worked." (*Id.* at p. 451.) According to the court in *Muller*, "[plaintiff's] anxiety disorder did not overnight render her office an unsafe workplace. There is a certain risk of crime in any workplace to which the general public has access. However, unless crime in the workplace is highly foreseeable, employers cannot reasonably be expected to insure against it." (*Id.* at p. 451.) The court stated that "[t]he voicing of a fear about one's safety in the workplace does not necessarily constitute a com-plaint about unsafe working conditions under Labor Code section 6310.[8] [The plaintiff's] declaration shows only that she became frightened for her safety as a result of her unfortunate experience with [the insured's son] and expressed her fear to [the defendant employer]; it is not evidence that the . . . office where she worked was actually unsafe within the meaning of Labor Code sections 6310 and 6402." (61 Cal.App.4th at p. 452.)

Even if *Muller, supra,* 61 Cal.App.4th 431 were correctly decided, it is distinguishable from the instant case. *Muller* involved a summary judgment motion. Unlike *Muller,* this case was decided on a demurrer. Under the applicable standard of review quoted above, we are required to treat the properly pleaded allegations as true and give the complaint a reasonable interpretation. (*Aubry, supra,* 2 Cal.4th at p. 967.) Thus, we must assume for

---

[8] Labor Code section 6310, subdivision (a)(1) provides: "(a) No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following: [¶] (1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative."

purposes of analysis that Ventura threatened to have plaintiff and three of his coworkers killed and that Ventura thereafter assaulted plaintiff with a screwdriver, facts that reasonably suggest that plaintiff's workplace was actually unsafe and directly involve the public policies discussed above. Moreover *Muller* involved a threat by someone who was not an employee and therefore not in the workplace on a daily or even regular basis. In contrast to *Muller,* the alleged violence in the workplace here was "highly foreseeable." (*Muller, supra,* 61 Cal.App.4th at p. 451.) Such foreseeability is based on Ventura's express death threats to four fellow employees, including plaintiff, and his subsequent attempted assault on plaintiff. At the demurrer stage, we must accept as true plaintiff's allegations that defendants terminated plaintiff because he complained to defendants about the threats of violence and reported the criminal assault to the police. Those facts as alleged by plaintiff are sufficient to state a cause of action for wrongful termination in violation of the public policies that promote a safe and crime-free workplace and encourage employees to report crimes and credible threats.

A relevant authority is *Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101 [80 Cal.Rptr.2d 60] (*Cabesuela*), in which the plaintiff employee alleged that, after a workplace homicide-suicide involving two employees, he complained to the employer at a safety meeting about the employee drivers' extended working hours, which the plaintiff believed posed a health threat. (*Id.* at pp. 105–106.) When a manager at the facility at which the plaintiff worked responded that the homicide-suicide incident had nothing to do with the safety meeting, the plaintiff replied that the company's "employees were being pushed too hard." (*Id.* at p. 106.) The defendant subsequently terminated the plaintiff's employment for "violence or threats of violence" because the manager understood the plaintiff's words to be a threat of physical violence against her. (*Ibid.*)

The plaintiff sued the employer, alleging, inter alia, that he had been terminated in violation of public policy based on a "myriad of statutory violations," including the violation of health and safety statutes. (*Cabesuela, supra,* 68 Cal.App.4th at p. 108.) The trial court sustained the employer's demurrer to each of the plaintiff's causes of action. (*Id.* at p. 107.)

■ In reversing the trial court's order, the Court of Appeal distinguished *Muller, supra,* 61 Cal.App.4th 431, and observed that the plaintiff's cause of action for wrongful discharge in violation of public policy alleged "that [the employer] 'terminated [the plaintiff] because he had complained of the long hours which the [employer's] drivers were required to work and which [the plaintiff] reasonably believed to be a health and safety hazard.' . . . We find these allegations sufficient to withstand a demurrer . . . ." (*Cabesuela, supra,* 68 Cal.App.4th at pp. 108–109.) The court in *Cabesuela, supra,* 68

Cal.App.4th at page 109, noted that "the *Muller* court cite[d] no authority" for the assertion that the workplace must actually be unsafe, and that such an assertion appeared "to contradict Justice Grodin's pronouncement [in *Hentzel, supra*, 138 Cal.App.3d at pp. 299–300] that '. . . an employee is protected from discharge or discrimination for complaining *in good faith* about working conditions or practices which he reasonably believes to be unsafe, whether or not there exists at the time of the complaint an OSHA standard or order which is being violated.' [Citation.]" Accordingly, the court agreed "an employee must be protected against discharge for a good faith complaint about working conditions which he believes to be unsafe." (*Id.* at p. 109.)

Although the facts of the instant case differ from those in *Cabesuela, supra*, 68 Cal.App.4th 101, each case involves an alleged complaint by an employee about an unsafe workplace related to the potential for violence. In *Cabesuela*, the plaintiff alleged that the "true reasons" why the employer terminated him "included the fact that he had exercised his right under Cal-OSHA (California Occupational Safety and Health Administration [*sic*]) to discuss the homicide-suicide as affecting the health and safety of plaintiff and other employees, and had complained of the long hours which the drivers were required to work, which plaintiff believed to be a health and safety hazard." (*Cabesuela, supra*, 68 Cal.App.4th at p. 108.) The allegations in the instant case provide that Ventura made threats of violence in the workplace and thereafter criminally assaulted plaintiff, such that Ventura posed a continuing risk of violence to fellow employees. The plaintiffs in both cases alleged that when they complained about their legitimate workplace safety concerns, they were terminated. As in *Cabesuela*, the allegations here are sufficient to state a violation of the public policy that protects an employee against discharge for making a good faith complaint about working conditions that he or she reasonably believes to be unsafe.

### D. *Public Benefit*

Defendants further contend that the policies upon which plaintiff relies are not predicated on any duties that would benefit the public at large—a requirement for a claim of wrongful discharge in violation of public policy. (See *Esberg v. Union Oil Co., supra*, 28 Cal.4th at p. 272.) According to defendants, plaintiff's complaint to defendants and report to the police did not benefit the public, but rather only plaintiff and three coworkers. That is not a reasonable interpretation of plaintiff's allegations. Plaintiff's complaint about Ventura's threats and report to the police served the public interest in promoting workplace safety, the interest in deterring workplace crime, and the interests of innocent coworkers who could have suffered harm. Thus, plaintiff's conduct inured to the benefit of the public.

In *Collier v. Superior Court* (1991) 228 Cal.App.3d 1117 [279 Cal.Rptr. 453] (*Collier*), the plaintiff alleged that he was terminated because he reported possible illegal conduct of other employees to the defendant employer. (*Id.* at p. 1120.) The trial court sustained the defendant's demurrer to the plaintiff's first amended complaint. (*Ibid.*) The Court of Appeal reversed, holding that "an employee who is terminated in retaliation for reporting to his or her employer reasonably suspected illegal conduct by other employees that harms the public as well as the employer, has a cause of action for wrongful discharge [in violation of public policy]." (*Id.* at pp. 1119–1120.)

Relying on *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] (*Foley*), the defendant employer in *Collier, supra,* 228 Cal.App.3d 1117 argued that "a plaintiff cannot state a cause of action for wrongful termination based on reporting a fellow employee's illegal conduct to his or her employer." (*Id.* at p. 1121.) In rejecting that assertion, the court in *Collier* distinguished *Foley,* noting that "[t]he plaintiff in *Foley* merely reported that another employee was being investigated for possible past criminal conduct at a previous job. His action served only the interests of his employer. The petitioner in this case reported his suspicion that other employees were currently engaged in illegal conduct at the job, specifically conduct [that] may have violated laws against bribery and kickbacks . . . ; embezzlement . . . ; tax evasion . . . ; and possibly even drug trafficking and money laundering. . . . Petitioner's report served not only the interests of his employer, but also the public interest in deterring crime and . . . the interests of innocent persons who stood to suffer specific harm from the suspected illegal conduct." (*Id.* at pp. 1122–1123, citations omitted.)

The court in *Collier, supra,* 228 Cal.App.3d 1117 analogized the situation before it to the facts in *Hentzel, supra,* 138 Cal.App.3d 290. "The *Hentzel* decision, cited with approval in *Foley,* provides a useful illustration. In that case, an employee protested what he considered to be hazardous working conditions caused by other employees smoking in the workplace. He was terminated and brought an action for wrongful discharge . . . . The *Hentzel* court held that on those facts, the employee had a viable cause of action for wrongful termination because the discharge in retaliation for his report implicated the public policy interest in a safe and healthy working environment for employees." (*Collier, supra,* 228 Cal.App.3d at p. 1125.) According to the court in *Collier,* the public policy interest in a safe and healthy workplace raised by the allegations at issue in *Hentzel* was similar to the public policy interest in a crime-free workplace inherent in the allegations in that case. "[T]he public interest is in a lawful, not criminal, business operation. Attainment of this objective requires that an employee be free to call his or her employer's attention to illegal practices, so that the employer may prevent crimes from being committed by misuse of its products by its employees." (*Ibid.*)

Defendants rely on *American Computer Corp. v. Superior Court* (1989) 213 Cal.App.3d 664 [261 Cal.Rptr. 796] (*American Computer*) to support their assertion that plaintiff's complaint and report to the police did not result in a public benefit. In that case, the court held there was no public benefit for purposes of a wrongful discharge claim when an employee reports to officers of his employer what he believes to be ongoing embezzlement by other employees. (*Id.* at pp. 665–666 ["Because we find [the plaintiff's] communications [about suspected embezzlement] with the officers did not serve any interest other than the company's, under *Foley* his reports will not support a wrongful termination claim"].) As noted in *Collier, supra,* 228 Cal.App.3d at page 1125, however, *American Computer* is inconsistent with the later case of *Hentzel, supra,* 138 Cal.App.3d 290, and "one of the principles upon which [*American Computer*] was based [absence of the employer's attempt to coerce an employee to engage in criminal conduct] is no longer tenable in light of a recent decision by the California Supreme Court [*Rojo v. Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373]]." In *Rojo v. Kliger* (1990) 52 Cal.3d 65, the court said that "[t]he public policy against sex discrimination and sexual harassment in employment . . . is plainly one that 'inures to the benefit of the public at large rather than to a particular employer or employee.' [¶] . . . [¶] [W]e reject defendant's argument that *Tameny* [*v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]] claims should be limited to situations where, as a condition of employment, the employer 'coerces' an employee to commit an act that violates public policy, or 'restrains' an employee from exercising a fundamental right, privilege or obligation." (*Id.* at pp. 90–91.)

Plaintiff's allegations in his first amended complaint involve both the public interest in a safe workplace at issue in *Hentzel, supra,* 138 Cal.App.3d 290 and the public interest in a crime-free workplace at issue in *Collier, supra,* 228 Cal.App.3d 1117.[9] The public has a vital interest in ensuring, to the extent possible, that employees are provided a workplace that is free from credible threats of violence and physical assaults. This interest is at least as compelling as the public's interest in a healthy, smoke-free workplace at issue in *Hentzel.* Similarly, prevention of violent crimes in the workplace is at least as important an interest as the prevention of the types of financial crimes that were at issue in *Collier,* such as embezzlement. As in those cases, attainment of these policy objectives requires that an employee be free to bring, and not be terminated for bringing, to the employer's attention illegal conduct or

---

[9] "Clearly, violence in the workplace affects society as a whole. The economic cost, difficult to measure with any precision, is certainly substantial. There are intangible costs too. Like all violent crime, workplace violence creates ripples that go beyond what is done to a particular victim. It damages trust, community, and the sense of security every worker has a right to feel while on the job. In that sense, everyone loses when a violent act takes place, and everyone has a stake in efforts to stop violence from happening." (FBI Nat. Center for the Analysis of Violent Crime, Workplace Violence: Issues in Response (circa 2003) pp. 14–15.)

credible threats of violence so that the employer can prevent crimes and foreseeable violence from occurring in the workplace. And the same policy objectives also require that an employee should be free to bring, and not be terminated for bringing, to the attention of the appropriate governmental agencies—such as the police department in this case—suspected criminal conduct and credible threats of violence, so that those agencies can act to prevent crimes and threats of violence. Accordingly, the allegations of plaintiff's first amended complaint satisfy the public benefit requirement as it pertains to the policy that is the basis of plaintiff's wrongful discharge claim.

## DISPOSITION

The order of the trial court dismissing the first amended complaint with prejudice is reversed. Plaintiff is awarded his costs on appeal.

Turner, P. J., and Kriegler, J., concurred.