Filed 8/10/17; Certified for Publication 9/5/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ORLANDO NAKAI,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>FRIENDSHIP HOUSE ASSOCIATION OF AMERICAN INDIANS, INC., et al.,<br><br>     Defendants and Respondents. | A147966<br><br>(San Francisco City & County Super. Ct. No. CGC-15-543773) |

**INTRODUCTION**

For over 20 years, plaintiff Orlando Nakai (Orlando[1]) was employed by Friendship House Association of American Indians, Inc. (Friendship House), a drug and alcohol rehabilitation program providing treatment services to Native Americans. His employment was terminated by the program's CEO, who also happened to be his mother-in-law, after his wife informed the CEO that Orlando had a gun and was angry at Friendship House employees and she had obtained a restraining order. Orlando then filed this action for wrongful termination, claiming discrimination on the basis of his marital status and that Friendship House had failed to conduct a reasonable investigation prior to discharging him. The trial court granted summary judgment in favor of defendants, ruling Orlando had failed to establish a prima facie case of marital status discrimination and failed to demonstrate his employer had a duty to investigate. We affirm.

---

[1] We refer to the parties by their first names given that some parties share the same last name.

1

Orlando worked in Friendship House's San Francisco office, as did Helen Waukazoo (Helen), the program's CEO and Orlando's mother-in-law. Helen had begun volunteering at Friendship House when she was 19 years old. She eventually became a paid employee and ultimately the CEO. Orlando commenced his employment with the program in 1994 and ultimately became the second-most senior manager and was considered a high performing employee.

In 2000, Orlando married Karen Nakai (Karen), Helen's daughter. Karen had participated in the treatment program prior to 2000, and then worked for the program as a counselor from 2009–2015.[2] In March 2014, Orlando and Karen began experiencing marital difficulties. Karen stated Orlando had become distant, and she became aware he was withdrawing large sums of money from their retirement fund.

Late one evening in May 2016, Karen called Helen at home. Karen reported that Orlando had a gun, was angry with the employees of Friendship House, was dangerous, and had relapsed on drugs. The following day, Helen placed Orlando on paid administrative leave. Karen, in turn, obtained a temporary restraining order (TRO) against him and provided Helen with a copy.[3] Based on the information Karen provided,

---

[2] Although Friendship House states in its respondent's brief that Orlando also participated in the treatment program, the record citation it provides shows only that Karen participated in the program. Orlando stated in his declaration in opposition to the defendant's motion for summary judgment that he has not abused substances for over 20 years, thus, suggesting that at one time he did suffer from an addiction. Helen, in turn, testified at her deposition that Karen has suffered a relapse, but did not provide specific dates.

[3] While Orlando takes issue with the veracity of the application that supported the TRO, pointing out it was prepared by Karen's daughter, who Karen admitted at her deposition abuses both drugs and alcohol and is not a reliable reporter of information, this is not an appeal from the issuance of that order and we are bound by the factual determinations made by the court that issued that order.

Helen subsequently terminated Orlando's employment.[4]

Orlando sued for wrongful termination, claiming (1) his employment was wrongfully terminated in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, et seq.), (2) his employment was wrongfully terminated in violation of the implied covenant of good faith and fair dealing, and (3) his employment was wrongfully terminated in violation of a duty under FEHA to conduct a reasonable investigation upon receiving Karen's report of an alleged threat. Thus, he alleged, among other things, that Friendship House, "acting through its Chief Executive Officer, discharged [him] in order to take sides in her daughter's divorce, . . . breach[ing] the Implied Covenant of Good Faith and Fair Dealing in violation of [FEHA] . . . and discharging him solely on the basis of his Marital Status." He further alleged, "the allegations made by Karen Nakai against [him] triggered a duty under the provisions of [FEHA] to conduct a reasonable investigation of the allegations," but Friendship House "failed to conduct any investigation whatsoever before making the decision to discharge [him]."

Defendants eventually moved for and were granted summary judgment.

## DISCUSSION[5]

### Analytical Framework Under FEHA

"Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) "In California, courts employ at trial the three-stage test that was established in *McDonnell*

---

[4] At her deposition, Karen testified Orlando never threatened or abused her during their marriage. Rather, she feared for her safety because of the emotional estrangement between the two and the presence of a gun in the house.

[5] Our standard of review is well established: On a grant of summary judgment, "[w]e review the trial court's decision de novo, considering 'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.'" (*Artiglio v. Corninh Inc.* (1998) 18 Cal.4th 604, 612, quoting Code Civ. Proc., § 437c, subd. (c).)

3

*Douglas Corp. v. Green* (1973) 411 U.S. 792, 802 . . . , to resolve discrimination claims. . . . [Citation.] At trial, the employee must first establish a prima facie case of discrimination, showing ' " 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based on a [prohibited] discriminatory criterion. . . ." ' " ' " (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 520, fn. 2 (*Reid*).) A prima facie claim arises "when the employee shows (1) at the time of the adverse action [he was a member of a protected class], (2) an adverse employment action was taken against the employee, (3) at the time of the adverse action the employee was satisfactorily performing his or her job," (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1003 (*Hersant*)) and (4) the adverse action occurred "under circumstances which give rise to an inference of unlawful discrimination." (*Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 253.) "Once the employee satisfies this burden, there is a presumption of discrimination, and the burden then shifts to the employer to show that its action was motivated by legitimate, nondiscriminatory reasons. [Citation.] A reason is ' "legitimate" ' if it is 'facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination.' [Citation.] If the employer meets this burden, the employee then must show that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination." (*Reid*, at p. 520, fn. 2, italics omitted.)

In the context of a defense motion for summary judgment, "[a]ssuming the complaint alleges facts establishing a prima facie case that unlawful disparate treatment occurred, the initial burden rests on the employer (moving party) to produce substantial evidence (1) negating an essential element of plaintiff's case or (2) (more commonly) showing one or more legitimate, nondiscriminatory reasons for its action against the plaintiff employee. . . . [¶] The burden then shifts to the plaintiff employee (opposing party) to rebut defendant's showing by producing substantial evidence that raises a rational inference that discrimination occurred; i.e., that the employer's stated neutral legitimate reasons for its actions are each a 'pretext' or cover-up for unlawful discrimination, or other action contrary to law or contractual obligation." (Chin, et al.,

4

Cal. Practice Guide: Employment Litigation (The Rutter Group 2016) ¶¶ 19:728 to 19:729, p. 19-121, italics omitted.) By applying *McDonnell Douglas'*s shifting burdens of production in the context of a motion for summary judgment, " 'the judge [will] determine whether the litigants have created an issue of fact to be decided by the jury.' " (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 805–807 (*Horn*).)

"[T]o avoid summary judgment, an employee claiming discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." (*Hersant*, *supra*, 57 Cal.App.4th at pp. 1004–1005.) "[T]he employee [cannot] simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee ' "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [. . . asserted] non-discriminatory reasons.' " ' " (*Horn*, *supra*, 72 Cal.App.4th at pp. 805–807, italics omitted.)

### *Failure to Allege a Prima Facie Case of Marital Status Discrimination*

Orlando claims Helen terminated his employment "solely because of his status as the spouse of the complaining employee and [her] son-in-law." Thus, the motivation for his discharge, Orlando contends, was marital status discrimination, which is prohibited by FEHA. (Gov. Code, § 12940, subd. (a) ["It is an unlawful employment practice . . . [¶] [f]or an employer, because of . . . marital status . . . to bar or to discharge the person from employment."].)

Illustrative examples of marital discrimination include refusing "to hire unwed mothers because they were unwed, a refusal to hire single people because they were single, or the granting of maternity leave to married teachers only." (*Chen v. County of Orange* (2002) 96 Cal.App.4th 926, 940 (*Chen*).)

5

While laws prohibiting marital status discrimination are " 'to prevent discrimination against classes of people,' " they do not extend to " ' "the status of being married to a *particular* person." ' " (*Chen*, *supra*, 96 Cal.App.4th at p. 944, quoting *Bammert v. Labor and Industry Review Commission* (App. 1999) 232 Wis.2d 365, 625.) The latter context has been described as a "[c]onduit case," occurring when a "plaintiff is the object of adverse action because of something *about* his or her spouse." (*Chen*, at p. 943.) "Conduit cases may be divided into two categories: those in which the animus directed against the plaintiff's spouse is itself unlawful, and those in which the animus is not unlawful." (*Ibid*.) "[S]imple politics is the typical example" of a conduit case not based on wrongful animus—for example, where a store employee was fired because her husband was a police officer who had participated in the arrest of the store owner's wife. (*Id*. at pp. 943–944, citing *Bammert*, at p. 365.) Such cases "have been universally met with rejection as valid marital status discrimination claims." (*Chen*, at p. 943.)

Orlando's allegations are those of a "conduit case," as his claim is predicated not on alleged animus towards the married state, itself, but on supposed particulars *about* his spouse. For example, Orlando asserts he was "treated in a disparate fashion from other employees of Respondent solely because of his status as the spouse of the complaining employee and son-in-law of Respondent's CEO." In other words, he claims he was treated differently not because he was married, but because he happened to be married to the CEO's daughter—a political problem, not a marital discrimination problem. He similarly asserts that in terminating his employment, the CEO "was attempting to influence and effect a Custody dispute involving her granddaughter." This is simply an assertion the CEO sided with her daughter on a child custody issue—a family dynamics problem, not a marital discrimination problem. Indeed, as the trial court observed, Orlando was married to the CEO's daughter for 14 years. Thus, "[i]f marital status were an issue, [Orlando] would have been terminated earlier. It was the identity of Ms. Nakai—not the marital status—that led to the discharge."

In short, while Orlando may have alleged that he was unfairly discharged on the basis of groundless or overblown accusations by his wife, he failed to allege a prima facie case of martial status discrimination.

*Failure to Raise a Triable Issue of Pretext and Marital Status Discrimination*

Even assuming Orlando alleged a prima facie case of marital status discrimination, which he did not, defendants made a sufficient showing in their motion for summary judgment to shift the burden back to him to produce evidence the stated reasons for his discharge were pretextual and raising a triable issue of marital status discrimination.

When an employee satisfies his or her initial burden to make a prima facie case, "the burden then shifts to the employer to show that its action was motivated by legitimate, nondiscriminatory reasons. [Citation.] A reason is ' "legitimate" ' if it is 'facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination.' [Citation.] If the employer meets this burden, the employee then must show that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination." (*Reid*, *supra*, 50 Cal.4th at p. 520, fn. 2, italics omitted.) The employer's "true reasons need not necessarily have been wise or correct." (*Guz*, *supra*, 24 Cal.4th at p. 358.) The "issue is discriminatory animus, not whether [the] employer's decision was 'wrong or mistaken,' or whether [the] employer is 'wise, shrewd, prudent, or competent.' " (*Ibid.*, quoting *Fuentes v. Perskie* (3rd Cir. 1994) 32 F.3d 759, 765.) If the employer provides a legitimate business reason for the employee's termination, the employee had the burden to provide "substantial evidence" which could convince a " 'reasonable factfinder' " that the " ' "employer did not act for the [. . . asserted] non-discriminatory reasons." ' " (*Hersant*, *supra*, 57 Cal.App.4th at p. 1005.)

In support of their motion, defendants first pointed to Orlando's own allegations— that his wife had called the CEO and told her Orlando "had a gun, was angry at all of the employees of Friendship House and that he relapsed to using drugs and/or alcohol." He further alleged his wife had obtained a TRO against him. Taking these allegations at face value, they show a non-discriminatory basis for the termination of his employment, and

7

as we have discussed above, they do not raise any issue of marital status discrimination. Defendants also pointed to Helen's deposition testimony that Karen had said she was afraid Orlando would shoot her. In Helen's view, this triggered a workplace concern because Karen claimed "what was being said was threatening to her," and Friendship House "policy does state that whether staff is off duty or on duty, there's a threat against them, that that is against [Friendship House's] policy." Indeed, given the number of reported workplace shootings in our day and age, this was an entirely reasonable perspective.

Orlando, in turn, failed to present any substantial evidence that the CEO's stated reasons for his discharge were pretextual, raising a triable issue of marital status discrimination. As we have discussed, Orlando's own allegations, which were unsupported by any evidence, were not allegations of *marital status* discrimination. In short, he failed to present any evidence raising a triable issue that the stated reason for his discharge was pretextual and, in fact, his discharge was motivated by marital status discrimination.

### Friendship House Was Not Required to Conduct an Investigation Under Either the Implied Covenant of Good Faith and Fair Dealing or FEHA

Orlando has never disputed that he was an at-will employee. Instead, he pointed out that regardless of whether an employee is at-will, an employer cannot violate the anti-discrimination provisions of FEHA. While that is correct, that does not mean FEHA imbues at-will employees with any contractual due process rights in connection with their employment.

At-will employment "establishes the presumption that an employer may terminate its employees at will, for any or no reason." (*Guz*, *supra*, 24 Cal.4th at p. 350.) The employer "may act peremptorily, arbitrarily, or inconsistently, without providing specific protections such as prior warning, fair procedures, objective evaluation, or preferential reassignment." (*Ibid*.) Accordingly, defendants could legally discharge Orlando for any reason, so long as it was not a prohibited discriminatory reason.

In asserting Friendship House was required to conduct an investigation before discharging him, Orlando relies on *Cotran v. Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93 (*Cotran*) and maintains the trial court erroneously relied, instead, on *Halvorsen v. Aramark Uniform Services, Inc.* (1998) 65 Cal.App.4th 1383 (*Halvorsen*).

In *Halvorsen*, an employee was fired after he blamed his supervisor for a poor business decision in front of a high-ranking manager. (*Halvorsen*, *supra*, 65 Cal.App.4th at p. 1387.) Shortly thereafter, he was fired due to performance. (*Ibid*.) He sued his supervisor for "wrongfully inducing the employer to terminate him," and his employer for "breach of contract or of the covenant of good faith and fair dealing." (*Id*. at p. 1386.) The trial court sustained the manager's demurrer and granted the employer's motion for summary judgment. (*Id*. at p. 1387.) The Court of Appeal affirmed, stating Halvorsen was unable "to identify any triable fact remaining as to whether his employment . . . was at-will, [so he instead attempted] to create a requirement of good cause for termination by invoking the covenant of good faith and fair dealing." (*Id*. at p. 1390.) However, when employment is at-will under the terms of the contract "the covenant of good faith and fair dealing 'cannot be used to imply an obligation which would completely obliterate a right expressly provided by a written contract.' " (*Ibid.*, quoting *Tollefson v. Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 853–854 [explaining that implied covenant does not limit an employer's right to terminate an employee], disapproved in part on another ground in *Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 474, fn. 5.)

In *Cotran*, two employees accused a high-level executive of sexual harassment. After an extensive investigation, the employer decided the accusations appeared credible and terminated the plaintiff's employment. (*Cotran*, *supra*, 17 Cal.4th at pp. 97–98.) The plaintiff ultimately proceeded to trial on a breach of contract claim. (*Id.* at p. 99.) The employer's defense was that it had concluded, honestly and in good faith, that there were grounds for termination. (*Ibid.*) The jury was instructed, however, that it was to determine " 'whether the [alleged] acts are in fact true.' " (*Ibid.*) It found none of the alleged acts of harassment actually occurred and awarded the plaintiff $1.78 million in lost compensation. (*Ibid*.) The Court of Appeal reversed. The Supreme Court granted

review to decide whether, in a case where an employee has been hired under a contract with an implied termination " 'for good cause' " provision, the jury must determine (a) whether the alleged misconduct took place or (b) whether the employer reasonably and in good faith believed the acts occurred. (*Id.* at pp. 95, 103, 107.) The court adopted the latter standard, clarifying that the role of the jury is not to determine whether the employer came to the right factual conclusion, but "to assess the *objective reasonableness* of the employer's factual determination of misconduct." (*Id.* at p. 103.) In short, *Cotran* did not involve at-will employment, but rather assumed the existence of a provision prohibiting discharge except for cause. (*Id.* at pp. 95, 107–108.) It was in connection with this undisputed point, that the court defined " 'good cause' " to mean a "reasoned conclusion" "supported by . . . an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond." (*Id.* at p. 108.)

The trial court correctly recognized that the instant case is comparable to *Halvorsen*, not to *Cotran*. Orlando, like the plaintiff in *Halvorsen*, was indisputably hired as an at-will employee, whereas the plaintiff in *Cotran* was not and, instead, could only be dismissed for "good cause." And Orlando, like the plaintiff in *Halvorsen*, claims the implied covenant of good faith and fair dealing created a duty on the part of his employer to conduct "a reasonable investigation before terminating him." (*Halvorsen, supra*, 65 Cal.App.4th at p. 1391.) But as the appellate court explained in *Halvorsen*, the reasonable investigation described in *Cotran* "applies only to cases in which an employee is under an 'implied agreement not to be dismissed except for "good cause." ' " (*Halvorsen*, at p. 1391, italics omitted.) It does not apply to an employee, like Orlando, whose employment is at-will. (*Ibid.*)

Orlando nevertheless maintains "[t]he allegations against [him] clearly triggered obligations of an Employer under California Law" to conduct "an adequate investigation" to ensure compliance with FEHA's mandate to provide a "Safe Work Environment."[6] To

---

[6] Although Orlando has provided a string of statutory citations in his opening brief, he cited to only Government Code section 12940 in his first amended complaint and his opposition to the motion for summary judgment "It is a well-established tenet of

10

begin with, FEHA's investigation process pertains to complaints of workplace discrimination or harassment prohibited by FEHA. (See Gov. Code, § 12940, subd. (j)(1) ["Harassment of an employee . . . shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."].) As we have discussed, Orlando did not allege a prima facie case of marital status discrimination or harassment under FEHA.

Furthermore, this claim is predicated on the notion FEHA's investigation process exists for the benefit of the alleged perpetrator, as well as the alleged victim of prohibited discrimination. California courts have applied federal precedent holding that when an employer receives a complaint of unlawful conduct, "the 'most significant immediate measure an employer can take in response to a . . . complaint is to launch a prompt investigation to determine whether the complaint is justified.' " (*Bradley v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1612, 1631, quoting *Swenson v. Potter* (2001) 271 F.3d 1184, 1193 [addressing duty to investigate complaint of unlawful harassment].)

Orlando cites *Franklin v. The Monadnock Co.* (2007) 151 Cal.App.4th 252, as suggesting alleged perpetrators have a procedural right to an investigation. In *Franklin*, an employee was fired after he reported workplace death threats to himself and other employees to the human resources department, and later to the police when his employer took no action and his coworker tried to stab him with a metal screwdriver. (*Id*. at p. 256.) The trial court dismissed his wrongful termination in violation of public policy claim. (*Id*. at p. 255.) The Court of Appeal reversed. The court first recognized that even an at-will employee can bring a claim for wrongful termination in violation of public policy; " '[t]he difficulty, of course, lies in determining where and how to draw the

appellate jurisprudence that a litigant may not pursue one line of legal argument in the trial court, and having failed in that approach, pursue a different . . . line of argument on appeal, thus depriving the trial court of the opportunity to consider what the appellant contends on appeal is the real dispute." (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519.) Accordingly, we do not address the remaining statutes to which Orlando now refers.

line between claims that genuinely involve matters of public policy, and those that concern merely ordinary disputes between employer and employee.' " (*Id.* at p. 257, quoting *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1090, overruled in part on another ground in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6.) It next concluded the plaintiff had adequately alleged a matter of public policy rooted in statute—the prevention of workplace violence. (*Franklin*, at pp. 258–260.) The court also concluded, as Orlando points out, that the prevention of workplace violence is a matter that "benefit[s] the public at large—a requirement for a claim of wrongful discharge in violation of public policy." (*Id.* at p. 263.) We fail to see how recognition of this seemingly self-evident proposition, however, translates into a rule that if the employer does not investigate an alleged threat of workplace violence that constitutes a breach of duty owed to the alleged perpetrator.

Orlando also maintains Friendship House had "written [p]olicies" obligating it "to conduct a *Cotran* like" investigation "of the claimed threat of workplace violence" that allegedly implicated FEHA. He additionally asserts these policies required the CEO, because she was Orlando's mother-in-law, "to recuse herself from the matter," which she failed to do. But again, Orlando's assertions fail at the starting gate because he has failed to state even a prima facie case of marital status discrimination under FEHA, making any provisions of FEHA inapplicable. (See *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1318 [where sex discrimination not proven, no actionable claim for failure to prevent sex discrimination]; *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021 [actionable claim of failure to investigate "is dependent on a claim of actual discrimination"].) Furthermore, Orlando has not identified any written policy that restricted the CEO's authority to terminate his employment. While Orlando infers such a restriction from a provision in an employee manual, that provision actually states: "No employee may be directly supervised by immediate family. Any *Board member* who has immediate family employed at Friendship House must abstain from voting, decision making, or attempting to influence decisions on any matter directly

12

related to that employee." (Italics added.) Helen, the CEO, was not Orlando's direct supervisor. Nor was it even alleged she was a board member.

In sum, there is no basis for Orlando's attempts to bring himself within the ambit of FEHA or *Cotran*.

## DISPOSITION

The summary judgment is affirmed. Respondents to recover costs on appeal.

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Margulies, J.

A147966, *Nakai v. Friendship House Association of American Indians, Inc. et al.*

14

Filed 9/5/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| ORLANDO NAKAI,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>FRIENDSHIP HOUSE ASSOCIATION<br>OF AMERICAN INDIANS, INC., et al.,<br><br>      Defendants and Respondents. | A147966<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-15-543773)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on August 10, 2017, was not certified for publication in the Official Reports. After the court's review of request under California Rules of Court, rule 8.1120 (a), and good cause established under rule 8.1105, it is hereby ordered the opinion should be published in the Official Reports.

Dated:

_____
Humes, P. J.

1

Trial Court:   San Francisco City and County Superior Court

Trial Judge:   Hon. Harold E. Kahn

Counsel:

Law Offices of John B. McMorrow, a Professional Corporation, John B. McMorrow; for Plaintiff and Appellant.

Freeman Mathis & Gary, LLP, Julie A. Marquis, Kacie L. Manisco; for Defendant and Respondent.