Filed 9/27/23  Wy v. City and County of San Francisco CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LISA WY,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>          Defendant and Respondent. | A165368<br><br>(San Francisco County<br>Super. Ct. No. CGC19578843) |

The City and County of San Francisco terminated plaintiff Lisa Wy from her employment after an investigation found she misused hundreds of City-provided public transit tokens for her personal benefit.  The City subsequently reinstated Wy after an arbitrator determined Wy should have been suspended for 60 days without pay, not terminated.  Wy then sued the City for discrimination and other violations of the Fair Employment and Housing Act (FEHA, Gov. Code, § 12940 et seq.).  The City successfully moved for summary judgment and Wy now appeals.  We shall affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.     *Wy's Employment with the City*

Lisa Wy worked as a Senior Clerk Typist for the City's Human Services Agency (HSA), Program Integrity and Investigations Program Collections Unit (Collections Unit).  From 2012 until 2017, Wy was responsible for

requesting public transit tokens from HSA's Fiscal Department and dispensing them to other Collections Unit employees when they needed them for work-related travel.  In August 2017, a manager in the Collections Unit determined Wy had made personal use of over 900 tokens.  HSA placed Wy on paid administrative leave while it investigated these allegations.  It concluded that Wy had misappropriated City property by using hundreds of tokens for her personal benefit in violation of HSA's policies, mainly to commute to and from work.  Following a *Skelly*[1] hearing, the hearing officer sustained charges that Wy had misappropriated public funds and recommended her dismissal.  HSA's executive director agreed with the recommendation and dismissed Wy.  At the time of her dismissal, Wy was 61 years old and had worked for the City for about 20 years.

A binding arbitration followed.  The arbitrator found Wy "used hundreds of tokens over . . . four years to go to and from work" and there was "no question" that this was not permitted "under City and Department policies."  Still, the arbitrator found employees were not specifically instructed about the use of resources like tokens beyond the written policies.  And there was evidence of a "loose atmosphere" as to these resources, with several employees using tokens or transit "Fast Passes" to run errands during the day and for other personal reasons.  The arbitrator concluded Wy's misconduct warranted a suspension rather than dismissal, and ordered HSA to return Wy to duty with full seniority minus a 60-day suspension without pay.

Thus, Wy returned to work as a Senior Clerk Typist in September 2018, about a year after she was terminated, and was paid her wages and benefits from the time she had been terminated minus 60 days.  HSA placed

[1] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194.

2

Wy in a clerical pool because another employee had been hired in the interim to perform her duties.

Meanwhile, in August 2018, Wy had filed an administrative charge with the Department of Fair Employment and Housing (DFEH) alleging her dismissal was discrimination based on race, gender, and age. And separately from the DFEH proceedings, Wy and her union representatives made several complaints about the duties Wy was asked to perform when she returned to work, asserted she experienced harassment and retaliation, and claimed there were issues with her bilingual pay. The City reviewed these allegations and found no corrective action was warranted. In response to Wy and her union, the arbitrator told the City in a January 2019 email that HSA should place Wy in her former position. HSA did so effective February 2019.

B.     *Trial Court Proceedings*

Wy filed this lawsuit in August 2019, asserting claims under FEHA for retaliation, age, gender, and race discrimination, and failure to prevent harassment and discrimination. She alleged she was terminated "due to her supervisor's animus towards the Asian females in the office," while "non-Asians and males were not disciplined . . . for using municipal transit passes or tokens for personal trips." She alleged that after she returned to work the City gave her position to a younger worker and assigned Wy different and changing duties, would not allow her to obtain bilingual pay, and permitted Wy's supervisors and co-workers to "heighten scrutiny of her work" and "subject her to unwanted comments and criticism" without legitimate business reason.

The City moved for summary judgment or, in the alternative, summary adjudication of each of Wy's claims. The trial court granted the City's motion, and entered judgment for the City. As to the retaliation claim, the trial court

3

found Wy failed to exhaust her administrative remedies. As to the discrimination claims, the court found the City met its burden to show it terminated Wy for a legitimate reason and Wy failed to produce substantial evidence to the contrary. The trial court wrote that "plaintiff argues that defendant had a lax attitude toward the use of MUNI tokens/passes and other workers who were not in plaintiff's class (i.e., elderly, Chinese, and female) misused MUNI tokens and were not similarly punished," but the court concluded that Wy's evidence failed to create a triable issue of material fact that discrimination was the real reason for her discipline. First, Wy failed to show the co-workers were similarly situated: "[u]nlike plaintiff, the co-workers were not the custodians of the tokens/passes for an agency of [the City]. Second, many of the cited employees were actually in plaintiff's class . . . . Third, there is no evidence that these co-workers abused the system to the same extent as plaintiff, who used approximately 900 MUNI tokens for personal use. At most, plaintiff has highlighted bureaucratic inefficiencies. She has not presented sufficient evidence for the trier of fact to reasonably conclude that the decisionmaker ([HSA's executive director]) harbored animus against her because of her race, age, or gender." Finally, because the underlying claims failed, Wy's cause of action for failure to prevent harassment and discrimination also failed.

Wy timely appealed.

### DISCUSSION

On appeal, Wy challenges only the summary adjudication on her discrimination claims. As such, we will not address the merits of Wy's causes of action for retaliation and for failure to prevent harassment and discrimination; Wy has forfeited any challenge to the trial court's rulings on those claims by failing to present any reasoned argument about them on

4

appeal.  (*Vitug v. Alameda Point Storage, Inc.* (2010) 187 Cal.App.4th 407, 412 (*Vitug*).)

A.    *Applicable Law and Standard of Review*

1.    *Discrimination Claims*

Claims of discrimination under FEHA are subject to the three-stage burden-shifting test set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.  The employee bears the initial burden to establish a prima facie case of discrimination.  (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 354.) The employee must show actions by the employer from which one can infer, if they remain unexplained, that it is more likely than not such acts were based on a discriminatory criterion.  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 520, fn. 2.)  If the employee establishes a prima facie case, a presumption of discrimination arises and the burden shifts to the employer to show its actions were motivated by legitimate, nondiscriminatory reasons.  (*Ibid.*)  A legitimate reason is one that is facially unrelated to prohibited bias, which, if true, would preclude a finding of discrimination.  (*Ibid.*)  If the employer meets this burden, the employee then must show the employer's reasons are simply pretexts for discrimination or produce other evidence of intentional discrimination.  (*Ibid.*)

2.    *Summary Judgment*

We review a grant of summary judgment de novo, considering all of the evidence submitted by the parties (except evidence that the court properly excluded) and the uncontradicted inferences reasonably supported by the evidence.  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)  In a discrimination case, if the employer presents evidence either negating an element of the plaintiff's prima facie case or showing the adverse employment action was based on legitimate reasons, it will be entitled to summary

5

judgment unless the plaintiff produces substantial evidence raising a rational inference of discrimination. (*Nakai v. Friendship House Assn. of American Indians, Inc.* (2017) 15 Cal.App.5th 32, 39 (*Nakai*).) The employee must offer evidence that the employer's stated reason was untrue or pretextual, or that the employer acted with discriminatory animus, or a combination of the two allowing a reasonable trier of fact to conclude the employer intentionally discriminated. (*Ibid.*) The employee cannot merely show the employer's decision was wrong, mistaken, or unwise. (*Ibid.*) Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons that a reasonable factfinder could rationally deem them unworthy of credence and hence infer that the employer did not act for the reasons it claims. (*Ibid.*)

We exercise our independent judgment to decide whether the material facts are undisputed. (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253.)[2] We view the evidence in the light most favorable to plaintiff as the losing party and liberally construe plaintiff's evidence while strictly scrutinizing defendant's, resolving any doubts or ambiguities in plaintiff's favor. (*Id.* at p. 254.) Still, an employee's subjective beliefs and

___

[2] It is not enough to state as an aside, without elaboration or analysis, as Wy does in her short appellate brief, that she "disputed no less than 33 of the 85 separately-stated Facts not in dispute." This is not in and of itself an argument that will defeat summary judgment, and it is not a substitute for analysis and reasoned argument. It is ultimately for the court to decide whether facts are material to the issue upon which summary judgment is granted. (See *Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 773 [although plaintiff argues there must be issues of material fact in dispute because plaintiff disputed 54 out of 63 material facts in the separate statement, the fact that plaintiff disputes "the vast majority of facts does *not* mean that any of those facts is material to the issue upon which summary judgment was ultimately granted. Here, we have concluded they are not"].)

uncorroborated declarations do not create a genuine issue of fact. (*Foroudi v. Aerospace Corporation* (2020) 57 Cal.App.5th 992, 1007–1008.) The employee must present nonspeculative evidence showing an actual causal link between prohibited motivation by decisionmakers and the adverse action. (*Id.* at p. 1008.) The stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger the employee's evidence must be in order to create a reasonable inference of a discriminatory motive. (*Ibid.*)

B.     *Analysis*

We will assume for the sake of argument that Wy met her initial burden to establish a prima facie case of discrimination, shifting the burden to the City to demonstrate it had a legitimate, nondiscriminatory reason for Wy's termination. We easily conclude the City met this burden by presenting undisputed evidence that Wy was terminated after an investigation concluded that over a period of years she had misappropriated hundreds of public transit tokens for her personal use, in violation of HSA's policies, an allegation she did not deny. We next turn to Wy's burden to offer substantial evidence that the City's justification was a pretext or that would otherwise allow a reasonable factfinder to conclude the City impermissibly discriminated against her. (*Nakai*, *supra*, 15 Cal.App.5th at p. 39.) This burden Wy has not met.

Wy contends that she identified "numerous non-Chinese, and male co-workers who received no discipline" for their personal use of Fast Passes and tokens. An employer's more favorable treatment of employees similarly situated to the plaintiff in all relevant ways, but outside her protected class, may show discriminatory intent. (*Gupta v. Trustees of California State University* (2019) 40 Cal.App.5th 510, 519–520.) But weak comparator evidence alone does not overcome an employer's evidence of a legitimate

reason for its decision. (*Id.* at p. 521.) Here, there is no evidence the co-workers Wy identified were similarly situated. One used tokens every other week to get coffee for a workplace "coffee club." Another used tokens "occasionally" to go to the farmers market. Two others reportedly used Fast Passes to commute — but the arbitrator observed these were "of lesser value" than tokens, and Wy cites no evidence that Fast Pass use resulted in similar financial loss to the City as her misuse of tokens. As the trial court concluded, "there is no evidence that [Wy's] co-workers abused the system to the same extent" as her personal use of hundreds of tokens.

Wy also contends that the City's failure to investigate others who misused tokens or Fast Passes or supervisors who failed to prevent misuse was a departure from "policy" and thus evinced pretext. But Wy does not establish what the City's "policy" was in this regard. Wy points to snippets of deposition testimony by the executive director of HSA that he would have investigated (or called for investigation of) any such misconduct that came to his attention. However, he went on to testify that the other misconduct raised by Wy at the deposition did not come to his attention. In short, Wy failed to present evidence that by investigating her misappropriation of hundreds of tokens over a multi-year period, the City was departing from its usual policy or procedure.

In another argument concerning pretext, Wy claims in her brief on appeal that two specific City employees accused of fraud were permitted to retire to avoid termination. But she cites no evidence in the record to support this assertion or to show these individuals were similarly situated to her. Wy does not develop this argument in any meaningful way, and we will not do so for her. (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 654.) Wy thus failed

8

to meet her burden on a pretext theory — the only theory she raises in her brief on appeal.[3]

Finally, Wy makes various complaints about how she has been treated since returning to work. But her appellate brief does not include citations to the record, supporting authorities, or any reasoned argument addressed to these points. To the extent Wy contends these events are relevant to her discrimination claims, such argument is thus forfeited. (*Vitug, supra,* 187 Cal.App.4th at p. 412.)

In sum, Wy's evidence was insufficient to withstand the City's motion for summary judgment.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

---

[3] As we have noted, the trial court also found that Wy failed to meet her burden on an animus theory. Wy does not challenge this ruling on appeal.

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Markman, J.*




A165368, *Wy v. City and County of San Francisco*

---

\* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10